UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL TERRYN,

       Plaintiff,                                     Hon. Richard Alan Enslen

v.                                                               Case No. 1:05 CV 43

LARRY TROMBLEY, et al.,

       Defendants.

_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendant Trombley's Motion for Failure to State a Claim, Pursuant to FRCivP 12(b), or, in the Alternative, Motion for Summary Judgment, Pursuant to FRCivP 56. (Dkt. #23). Pursuant to 28 U.S.C. § 636(b)(1)(B) granting authority for United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of motions for dismissal or summary judgment, the undersigned recommends that Defendant's motion be **granted in part and denied in part**.

**I.       BACKGROUND**

The following allegations are contained in Plaintiff's complaint. (Dkt. #1). At approximately 10:00 p.m. on June 27, 2003, Plaintiff began experiencing "discomfort" in his groin and left leg. Plaintiff requested medical treatment, but the officer to whom he directed his request "ignored Plaintiff and simply walked away."

Approximately six hours later, Plaintiff requested medical assistance because his pain had become "more severe" and he was unable "put any weight on his left leg." Defendant Thurston responded to Plaintiff's request and instructed him to exit his cell. After exiting his cell, Plaintiff was led to the control room where he spoke with Defendants Thurston, Barsosky, and Winters. Plaintiff requested that he be taken to the hospital. His request was denied and instead he was instructed to "go into the 'detox' cell, and wait."

Approximately two and one-half hours later, Plaintiff informed Defendants Ezdebski and Carrier that "he was in severe pain and was becoming very scared because he felt something was seriously wrong." Plaintiff asked Defendants "to please take him to the hospital." Defendant Carrier denied Plaintiff's request, informing him that he "was not going to the hospital."

At approximately 8:00 a.m. on June 28, 2003, Plaintiff telephoned his mother and asked her to intervene on his behalf. Plaintiff's mother subsequently spoke with Defendant Ezdebski who informed her that Plaintiff would not be taken to the hospital, but that he could be examined by a nurse two days later. Defendant Ezdebski further informed Plaintiff's mother that "until then, there was nothing they could or would do for Plaintiff."

At approximately 9:00 a.m. on June 28, 2003, Plaintiff spoke with Defendant Mantho. Plaintiff reiterated his health concerns and requested that he receive immediate medical treatment. Defendant Mantho informed Plaintiff that there was "nothing" he could do. Approximately two and one-half hours later, Plaintiff informed Defendant Mantho that his pain "had gotten worse." Defendant Mantho simply ignored Plaintiff. Approximately five hours later, Plaintiff "again requested help from an unidentified officer, but again did not receive any response to his request."

At approximately 6:00 p.m. on June 28, 2003, Plaintiff asked Defendant Thurston to

"help him" because his pain "was becoming intensely worse." Defendant Thurston informed Plaintiff that he had contacted Defendant Trombley who had instructed him "not to take Plaintiff to the hospital." Approximately one hour later, Plaintiff observed that his left calf was "red and swollen." Plaintiff pressed the "emergency call button" and requested that Defendant Thurston examine his leg. Defendant Thurston refused to examine Plaintiff's leg and again informed Plaintiff that he would not be taken to the hospital. Later that evening, Plaintiff revealed to Defendant Barsosky the deteriorating condition of his left leg. Defendant Barsosky responded that "there was nothing he could do," after which he simply walked away.

At approximately 10:30 p.m. on June 28, 2003, Plaintiff again informed Defendant Thurston that he was "scared and the pain was becoming worse." Plaintiff again asked Defendant Thurston to examine his leg, but Defendant Thurston refused. Approximately one hour later, Plaintiff pressed the "emergency call button" in his cell and informed Defendant Thurston that "his entire leg was throbbing and turning red, and that the pain had become even more severe." Plaintiff again requested to be taken to the hospital. Defendant Thurston stated that "there was nothing he could do."

At approximately 6:30 a.m. on June 29, 2003, Defendant Carrier delivered breakfast to Plaintiff's cell. After seeing the condition of Plaintiff's leg, Defendant Carrier stated that she would "see what she could do." Approximately two hours later Plaintiff was transported to the hospital.

Upon examination, medical personnel discovered the presence of a blood clot - three feet in length - in Plaintiff's left leg. Plaintiff was informed that he was suffering from "life threatening acute deep vein thrombosis." Plaintiff was informed that "the blood clot got so bad because it went untreated for so long." Plaintiff was confined to the hospital for the next seven days, during which time he experienced "the danger of the blood clot moving and causing a stroke, or lodging in the heart and lungs

causing death."

Upon his release from the hospital, Dr. Ralph Avedisian prescribed Coumadin for Plaintiff. The doctor instructed Plaintiff to use a heating pad to reduce the swelling in his leg and, furthermore, instructed Plaintiff that if he experienced pain he "must take Tylenol, not Motrin, because Motrin would have a detrimental effect on his medical condition." Defendant Trombley was informed of Dr. Avedisian's treatment instructions, but refused to comply therewith. Specifically, Defendant Trombley instructed jail personnel not to provide Plaintiff with a heating pad and, furthermore, "told jail staff to give Plaintiff Motrin for his pain."

On July 7, 2003, Plaintiff was examined by Defendant Trombley. Plaintiff complained that he had not received a heating pad as prescribed by Dr. Avedisian and, furthermore, was being given Motrin - instead of Tylenol - in direct contradiction to Dr. Avedisian's instructions. Defendant Trombley responded by informing Plaintiff that "Motrin was all [he] would give him."

Plaintiff further asserts that during his hospitalization, the Sheriff's Department obtained a "court order. . .to release Plaintiff from his sentence during his stay in the hospital." This was accomplished for the purpose of evading financial liability for Plaintiff's hospitalization. Following his discharge, Plaintiff was returned to the Mason County Jail to serve the remainder of his sentence. Furthermore, the Mason County Jail refused to pay the medical bills incurred by Plaintiff during his stay in the hospital. Defendant Trombley has now moved for dismissal and/or summary judgment.

**STANDARD**

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all Plaintiff's allegations and construe the complaint liberally in

Plaintiff's favor. *See Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000). To survive a motion to dismiss, Plaintiff's complaint must allege facts, which if proved, would entitle him to relief. *See Helfrich v. PNC Bank*, 267 F.3d 477, 480-81 (6th Cir. 2001) (citations omitted).

In reviewing a motion for summary judgment, the Court must confine itself to the narrow questions of whether there exist "no genuine issue[s] as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a Rule 56 motion, the Court cannot try issues of fact, but is empowered to determine only whether there exist issues in dispute to be decided in a trial on the merits. *See Perez v. Aetna Insurance Co.*, 96 F.3d 813, 819 (6th Cir. 1996); *Aiken v. The City of Memphis*, 37 F.3d 1155, 1161 (6th Cir. 1994). The crux of the motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *see also*, *Terry Barr Sales Agency v. All-Lock Co. Inc.*, 96 F.3d 174, 178 (6th Cir. 1996) (citing *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989)).

A motion for summary judgment requires the Court to view "inferences to be drawn from the underlying facts...in the light most favorable to the party opposing the motion." *Matsushita Electric Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also*, *Terry Barr Sales Agency*, 96 F.3d at 178; *Schaffer v. A.O. Smith Harvestore Products, Inc.*, 74 F.3d 722, 727 (6th Cir. 1996). The opponent, however, has the burden to show that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial.'" *Historic Preservation Guild of Bay View v. Burnley*, 896 F.2d 985, 993 (6th Cir. 1989) (quoting *Matsushita Electric Ind. Co.*, 475 U.S. at 587); *see also*, *Schaffer*, 74 F.3d at 727.

As the Sixth Circuit has recognized, Supreme Court decisions have encouraged the

granting of summary judgments, as such may be "an appropriate avenue for the 'just, speedy and inexpensive determination' of a matter." *Kutrom v. City of Center Line*, 979 F.2d 1171, 1173 (6th Cir. 1992). Consistent with this concern for judicial economy, "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient." *Anderson*, 477 U.S. at 252; *see also Bailey v. Floyd Board of Education*, 106 F.3d 135, 140 (6th Cir. 1997). Furthermore, mere allegations do not suffice. *See Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989) ("the party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact").

## ANALYSIS

Under Michigan law, before a person may initiate a medical malpractice action he must first provide the health professional or health facility against whom the action is asserted with written notice of intent to file a claim. *See* Mich. Comp. Laws § 600.2912b. Furthermore, the plaintiff in an action alleging medical malpractice must file with his complaint an affidavit of merit executed by a health professional. *See* Mich. Comp. Laws § 600.2912d. Failure to comply with these provisions requires the dismissal of the plaintiff's medical malpractice claims. *See Burton v. Reed City Hospital Corp.*, 691 N.W.2d 424, 429 (Mich. 2005); *Scarsella v. Pollak*, 607 N.W.2d 711, 715 (Mich. 2000). Defendant asserts that Plaintiff's claims against him must be dismissed for failure to comply with these provisions.

While Plaintiff's complaint does not expressly state a claim against Defendant Trombley for medical malpractice under Michigan law, Plaintiff does assert that Trombley's conduct, aside from violating various protections guaranteed by the United States Constitution, "also constitutes a tort under

state law for gross negligence as well as medical negligence." (Dkt. #1 at 12-13). Defendant appears to take the position that Plaintiff's state law claims are the equivalent of a claim of medical malpractice. Michigan law, however, distinguishes between negligence actions and medical malpractice actions. *See Bryant v. Oakpointe Villa Nursing Centre, Inc.*, 684 N.W. 2d 864, 870-72 (Mich. 2004); *Lindsey v. St. John Health System, Inc.*, 2005 WL 658921 at *1 (Mich. App., March 22, 2005).

Accordingly, to the extent that Plaintiff's complaint is interpreted as asserting a medical malpractice claim under Michigan law, Defendant Trombley is entitled to the dismissal of such claim. However, to the extent that Plaintiff's complaint asserts any other state law claim, including a claim for negligence, which is not a claim for medical malpractice under Michigan law, the Court recommends that Defendant Trombley's motion be denied.

Defendant Trombley next asserts that Plaintiff's federal constitutional claims must also be dismissed for failure to comply with the provisions of Michigan law identified above. This aspect of Defendant's motion is premised on the erroneous belief that Plaintiff's constitutional claims are "actually nothing more than an alleged malpractice action against Nurse Trombley." (Dkt. #24 at 3). Defendant's position is completely without merit. In his complaint, Plaintiff alleges facts against Defendant Trombley, which if proven, constitute the very epitome of deliberate indifference to Plaintiff's serious medical needs, precisely the sort of behavior which the Eighth Amendment forbids. Such claims are in no way the equivalent of a state law claim of medical malpractice. The Court, therefore, recommends that Defendant's motion to dismiss Plaintiff's federal constitutional claims be denied.

## CONCLUSION

For the reasons articulated herein, the Court recommends that <u>Defendant Trombley's Motion for Failure to State a Claim, Pursuant to FRCivP 12(b), or, in the Alternative, Motion for Summary Judgment, Pursuant to FRCivP 56</u>, (dkt. #23), be **granted in part and denied in part**. Specifically, the Court recommends that to the extent that Plaintiff's complaint is interpreted as asserting a claim for medical malpractice under Michigan law, such claim be dismissed, but that otherwise Defendant's motion be denied.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  July 21, 2005         /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge